**AMERICAN POSTAL WORKERS UNION, AFL–CIO, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

No. CIV.A. 00–451 ESH.

United States District Court, District of Columbia.

Nov. 15, 2000.

Melinda K. Holmes, O'Donnell, Schwartz & Anderson, P.C., Washington, DC, for Plaintiff.

Jane M. Lyons, U.S. Attorney's Office, Washington, DC, for Defendant.

## *MEMORANDUM OPINION*

HUVELLE, District Judge.

Before the Court are plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment. Having considered the motions, the oppositions and the entire record herein, the Court grants defendant's cross-motion for summary judgment and denies plaintiff's motion for summary judgment.

## BACKGROUND

Plaintiff, the American Postal Workers Union (APWU), is a labor union representing approximately 350,000 postal employees nationwide. For many years the APWU and the defendant, the United States Postal Service ("Postal Service"), have been parties to National Agreements, pursuant to Section 1206 of the Postal Reorganization Act of 1970, 39 U.S.C. § 1206. These Agreements set forth the terms and conditions of employment and provide for a grievance and arbitration procedure to resolve disputes. The current

National Agreement is effective from November 21, 1998 to November 20, 2000.

The grievance and arbitration procedures are outlined in Article 15 of the National Agreement. Article 15.1 defines a "grievance" as:

> a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment. A grievance shall include, but is not limited to, the complaint of an employee or of the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement or any local Memorandum of Understanding not in conflict with this Agreement.

The National Agreement provides for a four-step process of grievance resolution. Grievances which concern the interpretation of the National Agreement and involve issues of general application of the Agreement can be initiated at Step 4 and are the subject of national-level binding arbitration. In particular, Article 15.4.D sets forth the procedures for this expedited grievance procedure. The Agreement requires that the parties meet within thirty days of initiation of the grievance to develop the facts underlying the dispute. Each party is then required to put in writing its understanding of the issues and facts. If resolution is not achieved, the Union may appeal the grievance to national arbitration.

The APWU alleges that since 1993, it has initiated Step 4 grievances on seventeen different issues. Defendant disputes this allegation. The APWU further alleges that the Postal Service has violated the National Agreement by failing to meet with the Union and provide written statements of understanding within the time limits provided for in the National Agreement. Again, the Postal Service disputes these allegations. The APWU has brought this action seeking declaratory and injunctive relief. It seeks, *inter alia*, an order requiring the Postal Service to grant the grievances in question and to comply with Article 15 of the National Agreement.

## LEGAL ANALYSIS

### A. Legal Standard

Summary judgment is appropriate only if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). The mere existence of some factual dispute will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505.

### B. Plaintiff's motion for summary judgment must be denied because there are material facts in dispute.

In its Complaint, the APWU states that it has initiated Step 4 grievances on seventeen separate issues since October 1993. In its motion for summary judgment, the APWU alleges that the Postal Service failed to meet to define precise issues, develop necessary facts, and reach agreement on fourteen of these issues. While the APWU asserts that there is no genuine issue regarding these facts, the Postal Service claims, based on the Valenti Declaration ¶¶ 10–19, that the APWU never initiated grievances on five of these issues, and that meetings were held on seven others. This is but one example of the factual issues in dispute between the parties with respect to at least some of the seventeen grievances identified by the plaintiff. It is therefore apparent that there are genuine issues of material fact which preclude the granting of summary judgment in favor of the plaintiff.

### C. Defendant is entitled to summary judgment because plaintiff has failed to exhaust contractual dispute resolution procedures.

Moreover, even if one could conclude, as argued by plaintiff, that there were no

material issues in dispute, the Court would grant defendant's motion for summary judgment because of plaintiff's failure to exhaust the grievance and arbitration procedures established under the National Agreement. Courts have long recognized that federal labor policy encourages the use of grievance and arbitration procedures to resolve labor disputes because of the greater institutional competence of arbitrators in interpreting labor agreements. As noted by the Supreme Court:

> Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*AT & T Tech., Inc. .v. Communications Workers of America*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (citations omitted); *see also Communications Workers of America v. AT & T Co.*, 40 F.3d 426, 434 (D.C.Cir.1994).

■ Applying this presumption of arbitrability to the instant case, it must be concluded that the claim that defendant has failed to comply with the grievance procedures outlined in the National Agreement is arbitrable. According to Article 15.1 of the National Agreement, such a complaint may be brought under the grievance/arbitration procedures. Continued failure of the Postal Service to comply with these procedures merely advances the grievance to the next step of the process, eventually resulting in binding arbitration of this issue. Article 15.4.C provides that "Failure of the employer to schedule a meeting or render a decision in any of the Steps of this procedure within the time herein provided ... shall be deemed to move the grievance to the next Step of the grievance/arbitration procedure."

While plaintiff does not contest that it has failed to avail itself of the contract dispute resolution procedures set forth in the Agreement, it argues that the Agreement does not require arbitration of procedural non-compliance issues, and these issues do not, as argued by defendant, raise interpretative contractual issues subject to mandatory arbitration. However, this position ignores well-established case law that cautions courts against weighing the merits of an underlying contractual dispute while making an arbitrability determination. *AT & T*, 475 U.S. at 649–50, 106 S.Ct. 1415. In particular, this admonition applies to procedural disputes regarding the application or execution of grievance procedures, for as held by the Supreme Court in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964):

> Doubts whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration.... Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

*Id.* at 557, 84 S.Ct. 909; *see also Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 126–27 (3d Cir.1994) (arbitrator had exclusive jurisdiction to determine whether the union had failed to comply with a contractual grievance procedure in determining the propriety of the discharges).

Again, given these governing principles, it must be concluded that the issues raised by APWU's complaint are intertwined with substantive issues involving an interpretation of the Agreement, which disputes are to be initiated at the Step 4 level and if not

resolved, are subject to binding arbitration. For example, the APWU alleges that the Postal Service has failed to comply with the time limits set forth in the Agreement, but the Postal Service claims that the parties' long-standing practice of extending the time limits operates as a waiver of the Agreement. *See Troy Chemical*, 37 F.3d at 126 (whether the parties had by practice waived certain steps of the grievance procedure was a question of procedure for the arbitrator and not the court). The APWU also alleges that the Postal Service has failed to meet to define precise issues, develop necessary facts and reach agreement. The Postal Service responds that the National Agreement does not specify which party must initiate these meetings. Moreover, the scope of permissible remedies under the Agreement raises interpretative issues. These disputes over whether the Postal Service has complied with the National Agreement grievance procedures raise issues of interpretation of the Agreement and are rightly the subject of the grievance/arbitration procedure.

### D. Plaintiff has not proved that the grievance/arbitration procedures are futile.

█ Plaintiff also suggests that it would be futile to try and resolve the Postal Service's breach of the express grievances processes through the grievance procedure since there is "little basis on which to conclude that the Postal Service will comply with the grievances processes in yet another Step 4 grievance." Plaintiff's Opposition at 18. However, even if the disputed facts are accepted as true, it is clear that plaintiff has not met the exacting standard of proof needed to invoke the futility exception to the exhaustion requirement. This is a narrow exception and it only applies when resort to administrative remedies is "clearly useless." *Communications Workers of America*, 40 F.3d at 432 (citation omitted). For instance, the Supreme Court has found that parties are excused from exhausting arbitration procedures only in cases where the procedures

themselves have been repudiated, and the mere nonperformance of a contractual obligation, even a substantial breach of a contract, does not support an inference that the obligation to arbitrate has been repudiated. *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers Int'l, AFL–CIO*, 370 U.S. 254, 262–63, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962). In *Drake*, the employer claimed that it was excused from arbitration because the union had neglected arbitration procedures and breached a no-strike agreement. *Id.* The Court found that the employer was not excused because the union, by bypassing the grievance procedure, had not completely repudiated the arbitration process. *Id.* at 263, 82 S.Ct. 1346. The Court also held that if the parties had intended to condition their arbitration agreement on the absence of strikes, they could have drafted it to reflect that. *Id.* at 262, 82 S.Ct. 1346.

█ In the present case the parties disagree as to the defendant's compliance with the grievance/arbitration procedures. However, plaintiff has not demonstrated that the alleged delays caused by the defendant are tantamount to a repudiation of the arbitration process, thereby excusing plaintiff from exhausting that procedure. *See Ryberg v. Indoor Soccer Club of Cleveland, Inc.*, 1992 WL 181944, *4, 1992 U.S.App. LEXIS 18520, at *14 (6th Cir. July 31, 1992) (the delay of a grievance process does not constitute a repudiation of the grievance procedure). As in *Drake*, if the APWU and the Postal Service had intended to exclude disputes over the grievance procedures from the grievance/arbitration process, they could have drafted their agreement to so provide. Because the parties have agreed to submit disputes such as this one to binding arbitration, the Court has no alternative but to enforce that agreement.

At page 19 of its Opposition, the APWU cites two cases decided by the National Labor Relations Board for the proposition

 

that deference to arbitration procedures is inappropriate where the employer is charged with interfering with the grievance and arbitration mechanism. *Joseph T. Ryerson & Sons, Inc.,* 199 N.L.R.B. 461, 462 (1972); *St. Joseph's Hospital,* 233 N.L.R.B. 1116, n. 1 (1977). Plaintiff's reliance on these cases is misplaced. In *Ryerson,* the National Labor Relations Board held that deference to arbitration procedures was inappropriate because, under the contract, the actions complained of could not form the basis for a grievance and the arbitrator had no authority to grant the remedy requested. 199 N.L.R.B. at 462, 1972 WL 5117. In the present case, it is clear that Article 15.1 of the National Agreement authorizes the APWU to bring grievances regarding the Postal Service's compliance with the grievance/arbitration procedures.

In *St. Joseph's Hospital,* the National Labor Relations Board held that deferral to arbitration was improper because the employer's actions of withholding information relevant to arbitration violated the union's statutory right to certain information, not merely a contract right. Because the case was not a matter of contract interpretation, the matter was not appropriate for deferral to arbitration. 233 N.L.R.B. at 1119, 1977 WL 9397. The instant dispute does require a determination of the rights and obligations of the parties under the contract, and under the law, this function is best performed by an arbitrator.[1]

The case law recognizes a narrow exception to the well-established presumption of arbitrability in labor disputes, but the plaintiff has not overcome this presump-

tion, for it has not demonstrated that exhaustion would be futile.

### CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is DENIED and Defendant's cross-motion for summary judgment is GRANTED.

---

1. Also, as correctly argued by defendant (Reply at 11–12), NLRB precedent is of limited applicability since the Board and a court have different functions. The Board is entrusted with the job of enforcing the National Labor Relations Act through a process of adjudicating and remedying unfair labor practices, whereas the courts must enforce collective bargaining agreements, *see NLRB v. Strong,* 393 U.S. 357, 360–61, 89 S.Ct. 541, 21 L.Ed.2d 546 (1969), and as part of that function, courts "are not to usurp those functions which collective-bargaining contracts have properly 'entrusted to the arbitration tribunal.' " *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 562–63, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) (quoting *United Steelworkers of America v. American Mfg. Co.,* 363 U.S. 564, 566, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960)).